AMAMGBO & ASSOCIATES
DONALD AMAMGBO, ESQ.
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Telephone: 510-615-6000
Facsimile: 510-615-6025

REGINALD TERRELL
THE TERRELL LAW GROUP
223 25th Street
Richmond, CA 94804
Telephone: 510-237-9700
Facsimile: 510-237-4616
Email: reggiet2@aol.com

Attorneys for Plaintiff
ESTABAN MARVILLA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL PHILLIPS, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK & COMPANY, et al.,<br><br>Defendants. | Case No.: 08-CV-02671 SBA<br><br>**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED (Civil Local Rule 3-12)**<br><br>_____ |
| **This document relates to:**<br><br>ESTABAN MARVILLA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK & COMPANY, et al.<br><br>Defendants. | Case No.: 08-CV-03202 MHP |

1
**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

2          PLEASE TAKE NOTICE that a related case, Estaban Marvilla *v.* Sears, Roebuck &

3    Company, et al. ("Marvilla") was filed on July 3, 2008, in the United States District Court for the

4    Northern District of California.  Pursuant to Civil Local Rules 3-12(b) of the United States District

5    Court of the Northern District of California, Plaintiff Estaban Marvilla ("Plaintiff") submits this

6    Administrative Motion to Consider Whether Cases Should Be Related to the Carl Phillips v. Sears,

7    Roebuck & Company, et al. Case Number:  08-CV-2671 SBA, filed May 28, 2008, the low number

8    action also pending in this District.  That this action be assigned to the Honorable Sandra Brown

9    Armstrong.

10          These actions involve substantially the same transactions, events, questions of law, and

11    allege essentially the same violations of federal and California state marketing and sales practice

12    law and violations of California Unfair competition law against substantially the same defendants.

13    These actions allege that defendants have defrauded the public by: 1) Misrepresenting and

14    significantly overstating the horsepower produced by such products;  2) Concealing, suppressing

15    and failing to disclose material information, including the true, significantly lower horsepower of

16    Defendants' products; and 3) Falsely advertising and selling lawn mowers at different prices

17    containing identical engines that produce the same horsepower as different products with different

18    horsepower labels or ratings --- higher prices for falsely represented higher horsepower ---- while

19    concealing, suppressing and failing to disclose material information, including the fact that the

20    engines are identical and the significantly lower horsepower of the lawn mowers.  These actions

21    assert substantially the same rights on behalf of consumers who purchased lawn mowers

22    manufactured by defendants.

23          It appears likely there will be an unduly burdensome duplication of labor and expense and

24    potentially conflicting results if the cases are hear before different judges.

25          Given the similarities of these actions, assignment of these cases to a single Federal District

26    Court Judge will conserve judicial resources and promote efficient determination of the actions

27    while avoiding potentially conflicting results.  The same efficiencies will occur if the Court relates

28    Marvilla to Carl Phillips v. Sears Roebuck & Company.  Both cases pending in this District are at a

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

1  preliminary state and, thus, assignment to a single judge would not prejudice any of the parties.

2  Accordingly, Plaintiff Estaban Marvilla respectfully request that the action entitled <u>Marvilla v.</u>

3  <u>Sears, Roebuck & Company</u>, et al be deemed related to <u>Carl Phillips v. Sears, Roebuck &</u>

4  <u>Company</u>, the first filed case in this District and that is presently assigned to the Honorable Sandra

5  Brown Armstrong.

6  DATED:  8/19/08

                                     AMAMGBO & ASSOCIATES
7                                       THE TERRELL LAW GROUP

8                      By:  Reginald Terrell
                             Reginald Terrell

9

10                                       AMAMGBO & ASSOCIATES
                                     DONALD AMAMGBO, ESQ.
11                                       7901 Oakport Street, Suite 4900
                                     Oakland, CA 94621
12                                       Telephone:  510-615-6000
                                     Facsimile:  510-615-6025
13

14                                       REGINALD TERRELL
                                     THE TERRELL LAW GROUP
15                                       223 25th Street
                                     Richmond, CA 94804
16                                       Telephone:  510-237-9700
                                     Facsimile:  510-237-4616
17                                       Email:  reggiet2@aol.com

18                                       Attorneys for Plaintiff And All Others
19                                       Similarly Situated

20

21

22

23

24

25

26

27

28

3

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

1
2
3

AMAMGBO & ASSOCIATES
DONALD AMAMGBO, ESQ.
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Telephone:  510-615-6000
Facsimile:  510-615-6025

4
5
6
7
8

REGINALD TERRELL
THE TERRELL LAW GROUP
223 25th Street
Richmond, CA 94804
Telephone:  510-237-9700
Facsimile:  510-237-4616
Email:  reggiet2@aol.com

9
10

Attorneys for Plaintiff
ESTABAN MARVILLA

11

## UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA

13
14
15

CARL PHILLIPS, on behalf of himself and all
others similarly situated

16

Plaintiff,

17

v.

18

SEARS, ROEBUCK & COMPANY, et al.,

19

Defendants.

20

21

**This document relates to:**

22

ESTABAN MARVILLA, on behalf of himself
and all others similarly situated,

23

24

Plaintiff,

25

v.

26

SEARS, ROEBUCK & COMPANY, et al.

27

Defendants.

28

Case No.:  08-CV-02671 SBA

**ADMINISTRATIVE MOTION TO
CONSIDER WHETHER CASES
SHOULD BE RELATED (Civil Local
Rule 3-12)**

Case No.:  08-CV-03202 MHP

1
**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that a related case, Estaban Marvilla *v.* Sears, Roebuck & Company, et al. ("Marvilla") was filed on July 3, 2008, in the United States District Court for the Northern District of California. Pursuant to Civil Local Rules 3-12(b) of the United States District Court of the Northern District of California, Plaintiff Estaban Marvilla ("Plaintiff") submits this Administrative Motion to Consider Whether Cases Should Be Related to the Carl Phillips v. Sears, Roebuck & Company, et al. Case Number: 08-CV-2671 SBA, filed May 28, 2008, the low number action also pending in this District. That this action be assigned to the Honorable Sandra Brown Armstrong.

These actions involve substantially the same transactions, events, questions of law, and allege essentially the same violations of federal and California state marketing and sales practice law and violations of California Unfair competition law against substantially the same defendants. These actions allege that defendants have defrauded the public by: 1) Misrepresenting and significantly overstating the horsepower produced by such products; 2) Concealing, suppressing and failing to disclose material information, including the true, significantly lower horsepower of Defendants' products; and 3) Falsely advertising and selling lawn mowers at different prices containing identical engines that produce the same horsepower as different products with different horsepower labels or ratings --- higher prices for falsely represented higher horsepower ---- while concealing, suppressing and failing to disclose material information, including the fact that the engines are identical and the significantly lower horsepower of the lawn mowers. These actions assert substantially the same rights on behalf of consumers who purchased lawn mowers manufactured by defendants.

It appears likely there will be an unduly burdensome duplication of labor and expense and potentially conflicting results if the cases are hear before different judges.

Given the similarities of these actions, assignment of these cases to a single Federal District Court Judge will conserve judicial resources and promote efficient determination of the actions while avoiding potentially conflicting results. The same efficiencies will occur if the Court relates Marvilla to Carl Phillips v. Sears Roebuck & Company. Both cases pending in this District are at a

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

1  preliminary state and, thus, assignment to a single judge would not prejudice any of the parties.

2  Accordingly, Plaintiff Estaban Marvilla respectfully request that the action entitled <u>Marvilla v.</u>

3  <u>Sears, Roebuck & Company</u>, et al be deemed related to <u>Carl Phillips v. Sears, Roebuck &</u>

4  <u>Company</u>, the first filed case in this District and that is presently assigned to the Honorable Sandra

5  Brown Armstrong.

6  DATED:  5/19/08

                                   AMAMGBO & ASSOCIATES
                                   THE TERRELL LAW GROUP

7

8                     By:     Reginald Terrell
                             Reginald Terrell

9

10                                    AMAMGBO & ASSOCIATES
                                   DONALD AMAMGBO, ESQ.

11                                    7901 Oakport Street, Suite 4900
                                   Oakland, CA 94621

12                                    Telephone:  510-615-6000
                                   Facsimile:  510-615-6025

13

14                                    REGINALD TERRELL
                                   THE TERRELL LAW GROUP

15                                    223 25th Street
                                   Richmond, CA 94804

16                                    Telephone:  510-237-9700
                                   Facsimile:  510-237-4616

17                                    Email:  reggiet2@aol.com

18

19                                    Attorneys for Plaintiff And All Others
                                   Similarly Situated

20

21

22

23

24

25

26

27

28

3

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

# EXHIBIT B

1  **DONALD AMAMGBO**
2  **7901 OAKPORT, SUITE 4900**
   **OAKLAND, CA 94621**
3  **TELEPHONE:  510 615 6000**
   **FACSIMILE:  510 615 6025**
4
5  **REGINALD TERRELL**
   **THE TERRELL LAW GROUP**
6  **223 25TH STREET**
   **RICHMOND 94804**
7  **TELEPHONE:  510 237 9700**
   **FACSIMILE:  510 237 4616**

**ORIGINAL
FILED**

**JUL - 3 2008**

**RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND**

**E-filing**

8
9  **Attorneys for Plaintiff**

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA         **MHP**

12  ESTABAN MARVILLA, individually and      N. **C08-03202**
    on Behalf of all Others Similarly Situated,
13                                           CIVIL - CLASS ACTION
              Plaintiff,
14                                           JURY TRIAL DEMANDED      **ADR**
         vs.
15
    SEARS, ROEBUCK AND COMPANY;
16  DEERE & COMPANY; TECUMSEH
    PRODUCTS COMPANY; PLATINUM
17  EQUITY, LLC; BRIGGS & STRATTON
    CORPORATION; KAWASAKI MOTORS
18  CORP. USA.; MTD PRODUCTS INC;
    THE TORO COMPANY; AMERICAN
19  HONDA MOTOR COMPANY INC.;
    ELECTROLUX HOME PRODUCTS,
20  INC.; HUSQUAVARNA OUTDOOR
    PRODUCTS, INC.; and THE KOHLER
21  COMPANY
22
23          Defendants

24

25      Plaintiff Estaban Marvilla, by his undersigned counsel, on behalf of himself and a Class

26  of those similarly situated, bring this action against Defendants and alleges based upon personal

27  knowledge of the allegations pertaining to himself, and upon information, belief, and the

28  investigation of counsel as to all other allegations.

-1-

COMPLAINT

1

2                          **I.     I. NATURE OF THE CASE**

3          1.     For more than a decade, Defendants have lied to consumers by overstating the

4   horsepower of lawn mower engines. In advertising and selling their lawn mowers and

5   lawnmower engines, Defendants have defrauded the public by: 1) misrepresenting and

6   significantly overstating the horsepower produced by such products; 2) concealing, suppressing

7   and failing to disclose material information, including the true, significantly lower horsepower of

8   Defendants' products; and 3) falsely advertising and selling lawn mowers at different prices

9   containing identical engines that produce the same horsepower as different products with

10  different horsepower labels or ratings — higher prices for falsely represented higher horsepower

11  — while concealing, suppressing and failing to disclose material information, including the facts

12  that the engines are identical and the true, significantly lower horsepower of the lawn mowers.

13  Plaintiff asserts claims for violations of the California Business and Professions Code, the

14  California Consumers Legal Remedies Act, as well as common law unjust enrichment and

15  conspiracy.   Defendants have agreed and conspired among themselves to misrepresent and

16  conceal material facts concerning the horsepower of other Defendants' lawn mowers and lawn

17  mower engines, while misrepresenting, significantly overstating and concealing the true

18  horsepower of Defendants' own lawn mowers and lawn mower engines.

19         2.     Plaintiff brings this action on behalf of himself and a Class of similarly situated

20  consumers who purchased lawn mowers with engines sold or manufactured by Defendants.

21  Plaintiff, for himself and for the Class, seeks compensatory damages for the injuries caused by

22  Defendants' unlawful conduct, such additional monetary relief as allowed under the statutory

23  consumer and common laws of California, punitive damages, injunctive and other equitable relief

24  and costs of suit and reasonable attorneys' fees.

25         3.     Plaintiff brings these claims on behalf of himself and a California statewide Class

26  of similarly situated persons who purchased a lawn mower containing a gas combustible engine

27  up to 30 horsepower that was manufactured or sold by a Defendant.

28                    **II.     II. JURISDICTION AND VENUE**

                              COMPLAINT

1     4.     This Court has personal jurisdiction over the Defendants. The Court has

2 jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d). Defendants

3 have transacted business and their affairs in California and have committed the acts complained

4 of in California. The amount in controversy exceeds $5,000,000.00.

5     5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b),

6 (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims

7 occurred in this district. Defendants have transacted business and their affairs in this district and

8 have committed the acts complained of in this district.

9
### III.    III. PARTIES

10
**A.    A. Plaintiff**

11     6.     Plaintiff Estaban Marvilla resides within this judicial district in Antioch,

12 California. In approximately 2002, 2007 and 2008, Mr. Marvilla purchased a Lawn Machine

13 lawn mower at Home Depot and Costco, located in Pittsburg, California, which was

14 manufactured by Honda and contained allegedly 6 horsepower engines. Mr. Marvilla paid

15 approximately $250 for each lawn mower.

16
**B.    B. Defendants**

17     7.     Defendant Sears, Roebuck and Company ("Sears") is a corporation with its

18 headquarters located at 3333 Beverly Road B-5 317A, Hoffman Estates, Illinois. Sears sells lawn

19 mowers under its brand name, Craftsman, which are manufactured by Electrolux Home Products,

20 Inc. During the Class Period, Sears' Craftsman lawn mowers have contained engines

21 manufactured by Tecumseh Products Company, Briggs & Stratton Corporation, The Kohler

22 Company, and American Honda Motor Company, Inc. Sears also sells certain other brands of

23 lawn mowers in addition to its Craftsman lawn mowers. Sears advertises, markets and sells

24 Craftsman lawn mowers throughout the United States, including in California.

25     8.     Defendant Deere & Company ("Deere") is an Illinois corporation with its

26 headquarters located at One Deere Place, Moline, Illinois. During the Class Period, Deere has

27 installed in its lawn mowers engines manufactured by Defendants Briggs & Stratton Corporation,

28 American Honda Motor Company, Inc., Kawasaki Motors Corp. USA, and The Kohler

-3-

COMPLAINT

1  Company.  Deere advertises, markets and sells lawn mowers throughout the United States,
2  including in California.

3        9.      Defendant Tecumseh Products Company ("Tecumseh") is a corporation with its
4  headquarters located at 100 East Patterson Street, Tecumseh, Michigan.  During the Class Period,
5  Tecumseh has manufactured engines for installation in lawn mowers sold by Defendants Sears,
6  Electrolux Home Products, Inc., MTD Products Inc, and The Toro Company.  Tecumseh
7  manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout
8  the United States, including in California.

9        10.     Defendant Platinum Equity, LLC ("Platinum") is a California company with its
10  headquarters located at 360 North Crescent Drive, South Building, Beverly Hills, California
11  90210.  Platinum acquired Defendant Tecumseh's engines division in November 2007.  During
12  the Class Period Platinum manufactured engines that are installed in lawn mowers advertised,
13  marketed and sold throughout the United States, including in California.

14        11.     Defendant Briggs & Stratton Corporation ("Briggs & Stratton") is a corporation
15  with its headquarters located at 12301 West Wirth Street, Wauwatosa, Wisconsin.  During the
16  Class Period, Briggs & Stratton manufactured engines for installation in lawn mowers sold by
17  Defendants Sears, MTD Products Inc, Electrolux Home Products Inc., Deere and The Toro
18  Company.  Briggs & Stratton has acquired certain assets of original equipment manufacturers and
19  is engaged in the manufacturing and sale of certain lawn mowers.  Specifically, in June 2004,
20  Briggs announced its acquisition of Simplicity Manufacturing, Inc., which is headquartered in
21  Port Washington, Wisconsin.  In October 2002, Simplicity acquired Snapper, Inc., a Georgia
22  manufacturer of lawn mowers and other outdoor products.  Briggs & Stratton manufactures
23  engines that are installed in lawn mowers advertised, marketed and sold throughout the United
24  States, including in California.  Briggs & Stratton advertises, markets, and sells its own brand of
25  lawn mowers throughout the United States, including in California.

26        12.     Defendant Kawasaki Motors Corp. USA ("Kawasaki") is a corporation with its
27  corporate headquarters located at 9950 Jeronimo Road, Irvine, California.  During the Class
28  Period, Kawasaki manufactured engines for installation in lawn mowers sold by Defendants

-4-

COMPLAINT

1    Deere, MTD Products Inc, Electrolux Home Products, Inc., and The Toro Company.  Kawasaki

2    manufactures engines for installation in lawn mowers advertised, marketed and sold throughout

3    the United States, including in California.

4        13.    Defendant MTD Products Inc ("MTD") is a corporation with its headquarters at

5    5965 Grafton Road, Valley City, Ohio.  MTD manufactures lawn mowers under the brand names

6    Cub Cadet, Troy Bilt, Yard-Man, Yard Machines, Bolens and White Outdoor.  During the Class

7    Period, MTD installed in its lawn mowers engines manufactured by Defendants Briggs &

8    Stratton, American Honda Motor Company, Inc., Kawasaki, The Kohler Company and

9    Tecumseh.  MTD advertises, markets and sells lawn mowers throughout the United States,

10   including in California.

11       14.    Defendant The Toro Company ("Toro") is a corporation with a corporate address

12   of 8111 Lyndale Avenue South, Bloomington, Minnesota.  Toro manufactures lawn mowers

13   under the brand names Toro, Lawn-Boy and Exmark.  During the Class Period, Toro installed in

14   its lawn mowers engines manufactured by Defendants Tecumseh, Kawasaki, The Kohler

15   Company, American Honda Motor Company, Inc., and Briggs & Stratton.  Toro advertises,

16   markets and sells lawn mowers throughout the United States, including in California.

17       15.    Defendant American Honda Motor Company, Inc. ("Honda") is a subsidiary of

18   Honda Corporation with a corporate address of 4900 Marconi Drive, Alpharetta, Georgia.

19   During the Class Period, Honda manufactured engines for installation in lawn mowers sold by

20   Defendants MTD, Deere, Electrolux Home Products, Inc., and Toro.  Honda advertises, markets

21   and sells lawn mowers and lawn mower engines throughout the United States, including in

22   California.

23       16.    Defendant Electrolux Home Products, Inc. ("Electrolux") is a corporation with a

24   corporate address of 18013 Cleveland Parkway, Suite 100, Cleveland, Ohio.   Electrolux

25   manufactured lawn mowers as American Yard Products ("AYP").  Electrolux also did business

26   as Husqvarna Outdoor Products Inc., and Husqvarna AB until June 2006.  AYP produced lawn

27   mowers marketed under the brand names Poulan, Poulan PRO, Weed Eater and Husqvarna.

28   AYP also manufactured lawn mowers for Sears sold under the Sears Craftsman brand.  During

-5-

COMPLAINT

1  the Class Period, Electrolux installed in its lawn mowers engines manufactured by Defendants

2  Tecumseh, Kawasaki, The Kohler Company, Honda and Briggs & Stratton.  During the Class

3  Period, Electrolux advertised, marketed and sold lawn mowers throughout the United States,

4  including in California.  In June 2006, Electrolux's outdoor products segment was spun-off.  A

5  separate entity resulting from the spin-off is known as Husqvarna Outdoor Products, Inc.

6        17.     Defendant Husqvarna Outdoor Products, Inc. ("Husqvarna") is a company with a

7  corporate address of 1030 Stevens Creek Rd, Augusta, Georgia 30907.  Husqvarna manufactures

8  lawn mowers advertised, marketed and sold throughout the United States, including in California.

9  Husqvarna manufactures lawn mowers marketed under the brand names Poulan, Poulan Pro,

10 Weed Eater and Husqvarna, as well as lawn mowers sold under Sears's Craftsman brand.

11       18.     Defendant The Kohler Company ("Kohler") is a corporation with headquarters

12 located at 444 Highland Drive, Kohler, Wisconsin 53044.  During the Class Period, Kohler

13 manufactured engines for installation in lawn mowers sold by Defendants Deere, Toro,

14 Electrolux, and MTD.  Kohler manufactures engines that are installed in lawn mowers advertised,

15 marketed and sold throughout the United States, including in California.

16       **C.     IV. AGENTS AND CO-CONSPIRATORS**

17       19.     The acts alleged against the defendants in this Complaint were authorized,

18 ordered, or done by their officers, agents, employees, or representatives, while actively engaged

19 in the management and operation of defendants' businesses or affairs.

20       20.     Various persons and/or firms not named as defendants herein may have

21 participated as co-conspirators in the violations alleged herein and may have performed acts and

22 made statements in furtherance thereof.

23       21.     Each defendant acted as the principal, agent, or joint venturer of, or for, other

24 defendants with respect to the acts, violations, and common course of conduct alleged by

25 plaintiffs.

26              **IV.     V. FACTUAL ALLEGATIONS**

27       22.     Defendants manufacture, advertise, market and sell lawn mowers and the engines

28 installed in lawn mowers to consumers throughout the United States, including in California.

-6-

23.    Defendants currently sell nearly six million lawn mowers to the public throughout the United States, including California, per year.

24.    During the Class Period, Defendants have used the unit of horsepower to label, categorize, and market their lawn mowers and lawn mower engines.  The higher the actual horsepower, the more power the engine produces.

25.    The more horsepower generated by a lawn mower's engine, the better and faster the lawn mower is able to perform.

26.    Defendants market and offer for sale at higher prices lawn mowers labeled or otherwise advertised with higher horsepower.  The higher the horsepower, the higher the price Defendants charge.  Consumers throughout California, including Plaintiff and members of the proposed Class, pay more for lawn mowers labeled or otherwise represented by Defendants as producing higher horsepower.

27.    The horsepower of a lawn mower is a material fact, one that is important to a consumer and is the type of information upon which a buyer would be expected to rely in making a purchasing decision.  Statements of horsepower are factual representations that are likely to affect the lawn mower purchasing decisions or conduct of consumers, including Plaintiff and members of the proposed Class. As Defendant Briggs & Stratton's president and CEO, John Shiely, explained during an April 20, 2006 conference call with shareholders and analysts: "As far as the customers are concerned, it's always been our experience that, you know, more horsepower is better and that, ultimately that becomes the demand, that becomes what the customer wants."

A.    **Defendants' Misrepresentations of Horsepower**

28.    The horsepower purportedly generated by Defendants' lawn mowers is identified as a number on labels located on the lawn mowers or on the lawn mowers' engines, and/or in Defendants' other advertising, including packing materials, owner's manuals, materials distributed with Defendants' lawn mowers, Defendants' websites, and point-of-sale and other promotional materials disseminated or caused to be disseminated by or on behalf of Defendants to the public throughout the United States, including in California.

-7-

29.     Defendants have knowingly misrepresented and significantly overstated the horsepower of Defendants' lawn mowers and lawn mower engines.

30.     Throughout the Class Period (January 1, 1994 through the present), Defendants have knowingly misrepresented the horsepower of Defendants' lawn mowers and lawn mower engines through statements and representations made and disseminated to the public in Defendants' advertising, including product labeling, packing materials, owner's manuals, websites, point-of-sale materials and other promotional materials.

31.     In fact, the true horsepower of Defendants' engines is significantly less than the horsepower represented by Defendants in advertising, marketing and selling their lawn mowers and lawn mower engines to the public.

**B.      Defendants Market and Sell Lawn Mowers Containing Identical Engines as Different Products at Different Prices – Higher Prices for Falsely Represented Higher Horsepower.**

32.     Defendants knowingly advertise, market and sell identical engines with varying horsepower ratings and labels, thereby representing (directly and by implication) that these identical engines are different.  In fact these engines are identical on the basis of horsepower. Defendants sell these identical, but differently and misleadingly labeled, engines at different prices — with higher prices for engines falsely labeled with purported higher horsepower. Defendants thereby represent that the products are different when they are not but, rather, contain identical engines.

33.     In advertising, marketing and selling such engines, Defendants charge or cause to be charged a higher price for such identical engines containing a falsely represented higher horsepower.

34.     In advertising, marketing and selling such lawn mowers, Defendants conceal, suppress and fail to disclose the material fact that the lawn mowers contain identical engines.

35.     In selling such lawn mowers containing identical engines that produce the same horsepower as different products and at different prices — higher prices for falsely represented higher horsepower — Defendants repeatedly misrepresent the horsepower of the engines and conceal, suppress and fail to disclose material facts, including that such products contain identical

-8-

1  engines and the true, significantly lower horsepower of the engines.

2  **C.    Concealment, Suppression and Omissions of Material Facts**

3  36.    In advertising, marketing and selling their lawn mowers and lawn mower engines

4  to the public, Defendants have repeatedly concealed, suppressed and failed to disclose material

5  information, including the true, significantly lower horsepower of their lawn mowers and lawn

6  mower engines.

7  37.    Defendants' advertising, including labeling, packing materials, owner's manuals,

8  websites, point-of-sale materials and other promotional materials, conceals, suppresses and fails

9  to disclose the true, significantly lower horsepower actually produced by Defendants' lawn

10  mowers and lawn mower engines.

11  38.    Defendants published, and caused third party websites to publish, misleading

12  information regarding lawn mower horsepower in an attempt to conceal and suppress the material

13  fact of the true lower horsepower of Defendants' products.

14  **D.    Conspiracy to Defraud the Public and to Conceal Defendants'**
   **FraudulentPractices**

15  

16  39.    While knowingly misrepresenting horsepower in advertising, marketing and

   selling their own lawn mowers and lawn mower engines to the public, Defendants know that the

17  

18  other Defendants' lawn mower engines do not produce the horsepower represented by such other

19  Defendants.  Defendants have routinely tested other Defendants' engines and are aware that the

20  other Defendants also misrepresent the horsepower of their engines and that other Defendants

21  conceal, suppress and fail to disclose to the public the true, significantly lower horsepower of

22  their engines.

23  40.    While knowing of the other Defendants' horsepower misrepresentations and

24  omissions, Defendants agreed to conceal, suppress and fail to reveal the horsepower

25  misrepresentations and omissions of the other Defendants.

26  41.    Defendants communicated among themselves and agreed and conspired to conceal

27  and suppress other Defendants' misrepresentations and omissions relating to the horsepower of

   other Defendants' lawn mowers and lawn mower engines, while misrepresenting, significantly

28  

-9-

1  overstating the horsepower, and concealing and suppressing the true, significantly lower

2  horsepower of Defendants' own lawn mowers and lawn mower engines.

3      42.    Defendants have an incentive to hide truthful information about the true, lower-

4  than-represented horsepower of each other's lawn mowers and lawn mower engines from the

5  public, since Defendants are all engaging in the false, misleading, and deceptive advertising and

6  unfair and deceptive trade practices and unlawful conduct set forth in this Complaint.

7      43.    As a result of their conspiracy to conceal truthful horsepower information and

8  defraud the public, Defendants are able to continue to misrepresent and conceal and suppress the

9  true horsepower of Defendants' lawn mowers and lawn mower engines sold to Plaintiff and the

10  public and charge higher prices than they would if not for their misrepresentations and illegal

11  concerted activity.

12      **E.**    **Defendants' Power Labeling Task Force Furthered and Concealed their Fraud**

13

14      44.    Defendants Deere, Tecumseh, Briggs & Stratton, Kawasaki, MTD, Toro, Honda,

15  Electrolux, and Kohler are all members in a group that they call the "Power Labeling Task

16  Force," which provides Defendants the means, opportunity and cover to meet, discuss, conspire,

17  conceal and further their fraudulent horsepower misrepresentations.  The Power Labeling Task

18  Force regularly met at various locations, and agendas of the meetings were distributed in advance

19  of the meetings.  After the meetings, minutes and other summaries of the meetings were also

    distributed to Defendants.

20  **OPEI Website**

21      45. In or about 2001, the members of the Power Labeling Task Force, including

22  representatives of Defendants, met and discussed various means by which to conceal horsepower

23  fraud and misrepresent horsepower to the consuming public.  One suggestion was to put a

24  "disclaimer" — a statement containing misleading information on horsepower issues designed to

25  confuse the consuming public — on the Outdoor Power Equipment Institute, ("OPEI," an

26  otherwise legitimate organization) website.  The disclaimer was titled "Understanding

27  Horsepower" and includes misleading information on horsepower issues.

28

-10-

COMPLAINT

1    46.    On July 10, 2001, William G. Harley and Patrick W. Curtiss of the OPEI mailed

2  to Defendants a memorandum listing the uniform means by which the Power Labeling Task

3  Force members intended to misrepresent horsepower testing procedures and to conceal

4  Defendants' fraudulent horsepower labeling practices from consumers.

5    47.    The members of the Power Labeling Task Force, which are also members of the

6  OPEI, voted in favor of the proposal, and the OPEI created the webpage containing misleading

7  horsepower information.    The webpage continues to be on the OPEI's website.

8  www.opei.org/consumer/horsepower.asp.

9    48.    Defendants conduct rises above mere fraud.  Not only do Defendants lie about the

10  horsepower of their lawn mowers and lawn mower engines, Defendants conspired to conceal

11  these lies and deceive the consuming public by using the website of a legitimate entity.

12  **The creation of and amendment to SAE J1940**

13    49.    The Society of Automotive Engineers ("SAE") is a large, well respected,

14  automotive industry organization that creates and publishes engineering standards that are

15  voluntarily followed by manufacturers.   Standards are promulgated though committees that

16  include industry members.   During the Class Period, Defendants Briggs & Stratton, Kohler,

17  Tecumseh, Kawasaki and Honda were members of the SAE Small Engine & Power Equipment

18  Committee, which is the committee responsible for small engines, including lawn mower

19  engines.   Defendant Tecumseh's employee and agent, Mike Adams, was Chairman, and

20  Defendant Kohler also served in a leadership capacity as the secretary of the SAE Small Engine

21  & Power Equipment Committee through Kohler's employee and agent Mark Swanson.  All five

22  engine manufacturing Defendants became members of the SAE Small Engine & Power

23  Equipment Committee.

24    50.    In the late 1980s, several Defendants became aware of concerns expressed about

25  horsepower fraud.  They then took action within the SAE and implemented a "labeling standard"

26  called "SAE J1940" the purpose and effect of which was to conceal horsepower fraud.  This

27  labeling standard was an attempt to give Defendants a purportedly legitimate reason for labeling

28  their engines with a horsepower representation different than what their test results achieved and

-11-

1    to conceal their conspiracy and illegal acts.  There is no legitimate reason for a horsepower

2    labeling standard.  Instead, Defendants should label their engines with the actual horsepower

3    achieved by the horsepower test.

4         51.    In or about 2000, The Power Labeling Task Force instructed its members, which

5    were also members of the SAE Small Engine & Power Equipment Committee, to recommend to

6    the rest of the committee that revisions to SAE J1940 be made which would further conceal

7    Defendants' fraudulent horsepower representations.  The Power Labeling Task Force amended,

8    or caused to be amended, the SAE J1940 labeling standard to allow for a "fudge factor" of up to

9    15% to be added to horsepower labels.  The Power Labeling Task Force also concealed the true

10   reasons for the amendments to SAE standards by creating false or misleading explanations for the

11   purpose of, or reasons for, those amendments.  Even assuming that Defendants use accurate

12   horsepower testing procedures, the amended SAE J1940 standard explicitly "permits"

13   Defendants to lie about horsepower to consumers, and then to point to the labeling standard that

14   they conspired to create through the Power Labeling Task Force as the fraudulent justification for

15   the overstatement of horsepower.  Because the SAE J1940 standard appears on its face to be a

16   standard of the SAE — an otherwise legitimate association — Defendants' fraudulent

17   horsepower labeling practices are given the imprimatur of legitimacy and its conspiracy is

18   concealed.

19   **Creation of SAE J1995 "gross" horsepower**

20        52.    In 1990, Defendants conspired to create another SAE standard to both conceal

21   horsepower fraud and to give Defendants another means to affirmatively misrepresent

22   horsepower to the consuming public.  In 1990, several Defendants caused to be created,

23   published and disseminated worldwide SAE J1995, which is a "gross" horsepower testing

24   protocol.  "Gross" horsepower is the theoretical horsepower that an engine could achieve under

25   ideal laboratory conditions with all of the legally required accessories removed from the engine

26   — such as the air filter and exhaust mechanism.  By causing the creation of SAE J1995,

27   Defendants created a new, entirely different definition of horsepower for lawn mowers and lawn

28   mower engines that is deceptive to consumers.  Prior to 1990, Defendants used "net" horsepower,

-12-

1  which is the horsepower used in other industries, such as the auto industry.

2      53.    "Gross" horsepower is deceptive because by removing the necessary components,

3  such as exhaust systems and air filters, which drain an engine of power, a higher horsepower can

4  be achieved in the laboratory than in the field.  Of course, no consumer ever uses a lawn mower

5  without an exhaust, air filter and all of the other necessary parts of an engine.  Further, it is

6  against Federal and California state law to sell a lawn mower without such parts.

7      54.    Defendants continue to label their engines today, and at all relevant times, with

8  gross horsepower in "accordance" with the fraudulently created SAE J1995 standard.  Because

9  Defendants continue to rely on SAE J1995 and continue to use "gross" horsepower instead of net

10 horsepower, Plaintiff and members of the Class, and future purchasers of mislabeled lawn

11 mowers, have been injured because of this conspiracy.

12     55.    Defendants' conspiratorial use of gross horsepower to label their engines is

13 fraudulent. In labeling their engines, Defendants did not disclose what gross horsepower means,

14 and never disclose that the horsepower they use to label their engines differs from the horsepower

15 used by other industries such as the automobile industry.

16 **Torque power**

17     56.    In or about 2004, the Power Labeling Task Force began meeting and discussing

18 alternative means of labeling horsepower and to further their conspiracy. Defendant Briggs &

19 Stratton coordinated the research.  The research was presented to the members of the Power

20 Labeling Task Force by Stuart Drake of Kirkland & Ellis, who proposed that Task Force take

21 action to use alternative labeling practices.  The Power Labeling Task Force continued to meet

22 and discuss alternatives up until at least the day before this litigation was commenced in state

23 court on June 3, 2004.

24     57.    Starting in 2007, several Defendants, including Defendants MTD and Briggs &

25 Stratton began labeling their lawn mower engines with "torque."  Defendant Briggs & Stratton

26 entered into an indemnity agreement with Defendant MTD whereby Defendant Briggs & Stratton

27 agreed to indemnify Defendant MTD for claims of fraud arising from the labeling of lawn

28 mowers and lawn mower engines with "torque."  Defendants point to the amended SAE J1940

-13-

1    standard as the authority that allows them to label with "torque," despite the fact that engineers

2    assert that "torque" is not an appropriate quantifier of power and should not be used in power

3    labeling.

4         58.    Although Defendants did not begin to use "torque" to label engines until 2007,

5    Defendants rely on the 2002 amendment to SAE J1940 for justification to use torque to label

6    engines. As such, this conduct demonstrates a continued risk that the Power Labeling Task Force

7    will take further steps in the future to continue working on means to provide cover to horsepower

8    fraud.

9    **Defendant Engine Manufacturers Conspired to Conceal their Fraud**

10         59.    Defendants Briggs & Stratton, Kohler and Tecumseh formed a private group that

11    they called the "Eagle Group" to discuss common issues facing their companies, such as

12    proposed federal and state environmental regulations. The Eagle Group has been a means for

13    Defendants to discuss horsepower overstatement and proposed methods to conceal their

14    respective fraud.

15         60.    The Eagle Group has met in Wisconsin and Illinois and has existed since at least

16    1994. The Eagle Group has appeared at Power Labeling Task Force meetings.

17    **"Most Powerful" Craftsman Conspiracy**

18         61.    Since at least the mid-1990s, and at all times during the Class Period, Defendant

19    Sears has sold Craftsman lawn mowers, which Defendant Sears has touted as the "most

20    powerful" lawn mowers on the market. Since at least the mid-1990s, and at all times during the

21    Class Period, Defendants have sold lawn mowers to Defendant Sears, including the lawn mowers

22    sold under the Craftsman brand.

23         62.    Defendants Briggs & Stratton, Kohler, Electrolux and Sears conspired to deceive

24    consumers by significantly overstating horsepower to the public, as well as concealing truthful

25    horsepower information from the consuming public. During the Class Period, Sears marketed,

26    advertised and sold lawn mowers it claimed were the "most powerful" on the market. Even

27    though Briggs & Stratton sells the same exact engines to other lawn mower manufacturers, the

28

-14-

1   highest fraudulent horsepower labels are exclusively reserved for lawn mowers sold at Sears —

2   despite the fact that the horsepower of the Sears Craftsman lawn mower engines, contrary to

3   Sears's representations as the "most powerful" engines, is not greater than the same engines sold

4   by Briggs & Stratton to other lawn mower manufacturers.  Briggs & Stratton conspired with

5   Sears to provide Sears with the exclusive right to the highest fraudulent horsepower labels.

6        63.    Defendants Briggs & Stratton, Kohler, Electrolux, and Sears's conspiracy allowed

7   Sears to represent to the consuming public that Sears sells "the most powerful" lawnmower

8   engines in the world.  For example, on April 9, 2002, in a news release put on the wires from its

9   Hoffman Estates, Illinois headquarters, Sears announced that Sears's "Craftsman has introduced

10   a propelled, front-wheel-drive lawn mower with a 7 hp Briggs & Stratton engine – the most

11   powerful lawn mower engine ever built for use at home."  The press release goes on to state that

12   "[t]he industry's mightiest mower is joined by the most powerful consumer tractor on the market

13   – the Craftsman 27 hp Kohler Pro Garden Tractor."  This fraudulent misrepresentation has been

14   transmitted continuously via the Internet since April 9, 2002.

15        64.    The representations made by Sears in the April 9, 2002 press release that was

16   disseminated on the Internet and via the United States mails stating that the "7 horsepower"

17   Briggs & Stratton engine and the "27 horsepower" Kohler engine are the "most powerful"

18   engines on the market are patently false and misleading.  The advertised Briggs & Stratton engine

19   produces far less than 7 horsepower.  The advertised Kohler engine produces far less than 27

20   horsepower.  Further, the engine that Briggs & Stratton, Electrolux, and Sears knowingly

21   advertise, including through labeling, marketing, and selling to consumers the "most powerful"

22   walk-behind lawn mower — the 7 horsepower Briggs & Stratton engine — is the same engine

23   that is sold to other consumers with horsepower labels less than 7 horsepower.  Further, the

24   engine that Kohler, Electrolux, and Sears knowingly advertise, including through labeling,

25   marketing, and selling to consumers as the "most powerful" riding lawn mower — the 27

26   horsepower Kohler engine — is the same engine that is sold to other consumers with horsepower

27   labels less than 27 horsepower.

28   **F.    Defendants Fraudulently Concealed their Continuing Fraud from Discovery by Plaintiff**

-15-

65.    Plaintiff and members of the proposed Class did not know, and had no reasonable way of knowing, (a) that Defendants, in advertising, marketing and selling their lawn mowers and lawn mower engines, engaged in the unfair and deceptive acts or practices and other unlawful conduct set forth in this Complaint; (b) the falsity of Defendants' material misrepresentations; or (c) Defendants' conspiracy to conceal and suppress truthful information about the actual horsepower of other Defendants' lawn mowers and lawn mower engines, while concealing and suppressing truthful information about the actual, significantly lower-than represented horsepower of Defendants' own lawn mowers and lawn mower engines.

66.    Defendants affirmatively and actively concealed their misrepresentations and omissions and their conspiracy in order to avoid detection and hide their unlawful conduct from Plaintiff and the public.

67.    Defendants' conduct of misrepresenting and concealing material facts concerning the horsepower of Defendants' lawn mowers and lawn mower engines, and Defendants' conduct in advertising, marketing and selling lawn mowers containing identical engines as different products at different prices — higher prices for falsely represented higher horsepower — without disclosing the material facts that the engines are identical and the true, significantly lower horsepower of such products, concealed from Plaintiff their causes of action.

68.    Defendants further concealed their use of the same engines in differently labeled and differently priced lawn mowers by covering the engines with different shrouds or covers that typically display a different horsepower number, even though the covered engine is identical to that contained in lawn mowers with different shrouds or covers (and typically with a different horsepower label on the shrouds).  These shrouds or covers have no effect on performance of the lawn mower.  Defendants use them as fraud covers to falsely represent that such lawn mowers are different products (with different horsepower ratings), which Defendants advertise and sell at different prices (higher prices for higher falsely represented horsepower).  In fact, such products are not different, contain identical engines and do not produce the horsepower represented by Defendants.

69.    Defendants' actions in causing the amendment of the SAE J1940 labeling standard

-16-

COMPLAINT

1    further hid their fraud.   Because of the amendments, the SAE J1940 standard provides that

2    production engines shall develop not less than 85% of the labeled horsepower.  The change to the

3    SAE J1940 standard effected by Defendants provides for a built-in "fudge factor."  For example,

4    an engine is "accurately" labeled under SAE J1940 if its label states it produces 20 horsepower

5    but only produces 17 horsepower when tested.   This misleading "fudge factor" alone is

6    fraudulent, however, Defendants inflate their horsepower ratings even higher than the "fudge

7    factor."

8        70.    Additionally, the amended SAE J1940 standard provides Defendants with the

9    option of representing the power of their engines on the basis of "torque power."  "Torque

10   power" is not a measure of anything and is a meaningless, fictional value concocted for the sole

11   purpose of concealment.

12       71.    The true purpose of these changes was to provide cover for and conceal

13   Defendants' fraudulent horsepower misrepresentations and omissions.  At meetings attended by

14   Defendants' representatives, it was made clear that the purpose of these changes was to conceal

15   Defendants' past fraud, and to allow Defendants to continue their fraudulent labeling practices.

16       72.    Defendants' misrepresentations and omissions concerning the horsepower of

17   Defendants' lawn mowers and lawn mower engines have continued despite the changes to the

18   SAE J1940 standard effected by Defendants.   Defendants misrepresent and overstate the

19   horsepower of Defendants' lawn mower engines in excess even of the "fudge factor" provided

20   for in the amended voluntary horsepower labeling standard SAE J1940.

21       73.    Defendants met during the Class Period to discuss ways to conceal their fraud. In

22   June 2003, at an annual board meeting of the OPEI in Colorado Springs, Colorado, John Jenkins,

23   the President of Defendant Deere, warned representatives of several Defendants that if the

24   industry did not address the fraudulent horsepower inflation, he would "blow the whistle" on

25   Defendants' conduct.

26       74.    At the foregoing meeting, an executive from Defendant Kohler informed an

27   executive of Defendant MTD that a proposal would be drafted by the Eagle Group to address the

28   issue of horsepower inflation and overstatement.

-17-

COMPLAINT

75.    At the April 2004 meeting of the Power Labeling Task Force, a proposal was made for Defendants to take advantage of the amended SAE labeling standard to use "torque power" instead of horsepower in advertising, marketing and selling Defendants' lawn mowers and lawn mower engines. Defendants proposed using "torque power" in order to conceal their misrepresentations and omissions concerning horsepower, because torque has a higher numerical value or number than horsepower and is more confusing to consumers. Changing to "torque power" was an opportunity for Defendants to further conceal their fraud by using a number that is meaningless on an objective, engineering basis, and is simply designed to draw attention away from Defendants' fraudulent conduct involving horsepower misrepresentations and omissions.

76.    Defendants' unlawful conduct and conspiracy as set forth in this Complaint is inherently self-concealing. In the exercise of reasonable diligence, the true facts regarding the Defendants' fraud and conspiracy could not have been discovered.

77.    Plaintiff and Class members could not and did not detect Defendants' horsepower misrepresentations and omissions. Plaintiff and Class members had no means of discovering or detecting Defendants' horsepower misrepresentations and omissions. Plaintiff does not own or have access to testing equipment necessary to test the actual horsepower of Defendants' lawn mower engines. The testing equipment is virtually impossible for consumers to find and is cost-prohibitive.

78.    Plaintiff and members of the Class are under no duty to inquire into the truthfulness of Defendants' representations, including Defendants' representations concerning the horsepower of Defendants' lawn mowers and lawn mower engines. In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants owe a duty to Plaintiff, all Class members and the public to provide truthful, non-deceptive information and to avoid and refrain from unfair and deceptive, and otherwise unlawful acts and practices, including false or misleading advertising.

79.    Defendants also used the OPEI to conceal their fraud by drafting and having placed on the OPEI's website the "Understanding Horsepower" webpage. Through this website posting, Defendants concealed their fraud by attempting to conceal any detectable horsepower

-18-

COMPLAINT

1   shortcomings. While Defendants use gross horsepower to label their engines, the representations

2   made on the OPEI's website state that factors such as atmospheric conditions were to blame for

3   the lack of horsepower in their engines. This website posting is misleading and is designed not to

4   inform consumers, but to conceal Defendants' fraud. Rather than correct their horsepower

5   misrepresentations, Defendants developed more misrepresentations to conceal their fraud and

6   conspiracy.

7          80.    Plaintiff, in the exercise of due diligence, was not aware of and did not discover

8   the facts underlying their claims, or facts indicating that Defendants' unlawful conduct caused

9   Plaintiff's harm, until only several weeks before originally filing this action on June 3, 2004.

10         81.    Defendants' unlawful practices as described in this Complaint are continuing in

11  nature.

12         82.    Unless enjoined, Defendants' unlawful conduct will continue and Plaintiff and

13  members of the Class will continue to purchase Defendants' lawn mowers and lawn mower

14  engines subject to Defendants' unlawful acts and practices set forth in the Complaint.

15  **G.    Harm to Plaintiff and Class Members**

16         83.    Plaintiff and members of the proposed Class are consumers who have been injured

17  in their money or property by purchasing Defendants' lawn mowers and lawn mower engines that

18  were not as represented by Defendants.

19         84.    Plaintiff and the members of the proposed Class suffered actual damages in

20  purchasing lawn mowers that were not as powerful as, and did not contain the horsepower,

21  represented by Defendants and Plaintiff and members of the proposed Class did not receive the

22  benefit of their bargains.

23         85.    Plaintiff and members of the proposed Class paid more for their lawn mowers than

24  they would have paid absent Defendants' unlawful conduct.

25         86.    Because of Defendants' unlawful conduct, Plaintiff and members of the proposed

26  Class were deprived of the opportunity to make informed purchasing decisions based on truthful

27  information, including, without limitation, not purchasing Defendants' products, or not paying

28  prices for Defendants' products that were inflated due to Defendants' deceit.

-19-

COMPLAINT

87.    Because of Defendants' unlawful conduct, Plaintiff and members of the proposed Class lost the opportunity to purchase accurately labeled, lower horsepower lawn mowers and to pay lower prices for such products, rather than the higher prices Defendants charged or caused to be charged for Defendants' misrepresented products.

88.    Because of Defendants' unlawful conduct, Plaintiff and members of the Class were deprived of the opportunity of making an informed purchasing decision, and were deprived of the opportunity to refuse to do business with companies, such as Defendants, engaged in fraudulent and deceptive conduct.

89.    As a proximate result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class have suffered damages in an amount to be determined at trial.

90.    Defendants have been unjustly enriched by selling millions of misrepresented products to the public through systematic fraud and deception.

**H.    Public Interest and Benefit**

91.    Plaintiff brings this action on behalf of himself and all similarly situated persons in the proposed Class for the relief requested as to Plaintiff and Class members and to promote the public interests in the provision of truthful, non-deceptive information to the public in order to allow consumers to make informed purchasing decisions, and in protecting Plaintiff and the public from Defendants' unfair, deceptive and fraudulent practices.

92.    Defendants' misrepresentations and omissions of material facts and other unlawful conduct as set forth in this Complaint were effected through Defendants' advertising directed to Plaintiff and the public at large and disseminated throughout the United States, including in California.

**V.    VI. CLASS ACTION ALLEGATIONS**

93.    Pursuant to Rule 23(a), (b)(2) and (b)(3), Plaintiff brings this action on behalf of himself and the members of the following proposed Class:

> All persons in California who, beginning January 1, 1994 through the present purchased, for their own use and not for resale, a lawn mower containing a gas combustible engine up to 30 horsepower provided that either the lawn mower or the engine of the lawn mower was manufactured or sold by a Defendant.

-20-

94.     Excluded from the Class are (i) each Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

95.     Members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery.  Plaintiff is informed and believes, based upon the nature of the trade and commerce involved, that the proposed Class includes millions of Class members in California.

96.     There are questions of law or fact common to the members of the Class and such common questions predominate over questions affecting individual members.  Among the questions of law or fact common to the applicable proposed Class are:

a.     Whether Defendants misrepresented the horsepower produced by the engines in the lawn mowers manufactured or sold by Defendants to Plaintiff and members of the Class;

b.     Whether Defendants concealed, suppressed and failed to disclose truthful information concerning the horsepower produced by the engines manufactured or sold by Defendants in lawn mowers sold to Plaintiff and members of the Class;

c.     Whether Defendants' representations and omissions regarding the horsepower produced by lawn mowers and lawn mower engines manufactured or sold by Defendants involved representations and omissions of material facts;

d.     Whether Defendants advertised and sold lawn mowers containing identical engines as different products at different prices (higher prices for falsely represented higher horsepower), without disclosing the fact that the engines contained in such products are identical;

e.     Whether Defendants' conduct as set forth in this Complaint violates the California Business and Professions Code;

-21-

f.      Whether Defendants' conduct as set forth in this Complaint violates the California Consumers Legal Remedies Act;

g.      Whether Defendants' misrepresentations, omissions and other conduct set forth in this Complaint occurred in the course of trade or commerce and/or in the conduct of business;

h.      Whether Defendants conspired to conceal and suppress truthful information about the actual, significantly lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines;

i.      Whether Plaintiff and members of the proposed Class have been injured by Defendants' conduct;

j.      Whether Plaintiff and the members of the proposed Class are entitled to damages;

k.      Whether Plaintiff and the members of the proposed Class are entitled to punitive damages and other monetary relief as provided under state law;

l.      Whether Defendants were unjustly enriched Because of Defendants' conduct set forth in this Complaint;

m.      Whether Defendants conspired to defraud the public and engaged in the unlawful acts or practices in furtherance of the conspiracy as set forth in this Complaint;

n.      Whether injunctive relief is appropriate; and o. Whether Plaintiff is entitled to recover costs and expenses incurred in prosecuting this action and reasonable attorneys' fees.

97.     Plaintiff's claims are typical of the claims of the Class. Plaintiff and members of the proposed Class all purchased lawn mowers containing engines manufactured and sold by Defendants. Plaintiff and the members of the proposed Class have all suffered damages Because of Defendants' common conduct and fraudulent scheme, including Defendants' horsepower misrepresentations and omissions and other unlawful conduct set forth in this Complaint.

98.     Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no interest adverse to the interests of the members of the proposed Class. Plaintiff has retained competent counsel who has extensive experience in prosecuting consumer fraud and

-22-

1  complex Class action litigation.

2      99.    The prosecution of separate actions by individual members of the Class would
3  create a risk of inconsistent or varying adjudications, establishing incompatible standards of
4  conduct for Defendants.

5      100.    Defendants have acted or refused to act on grounds generally applicable to the
6  Class. Declaratory and injunctive relief with respect to the Class is appropriate.

7      101.    The questions of law or fact common to members of the proposed Class
8  predominate over any individual questions affecting only individual Class members. Each of the
9  members of the proposed Class purchased a lawn mower that was not as represented due to
10  Defendants' misrepresentations of, and concealment, suppression and failure to disclose the
11  actual, significantly lower horsepower of the lawn mower and lawn mower engine. The issues of
12  fact and law applicable to the Class are identical to the issues of fact and law applicable to each
13  individual member of the proposed Class.

14      102.    A Class action is an appropriate method for the fair and efficient adjudication of
15  this controversy and Class action treatment is superior to the alternatives. There is no special
16  interest in the members of the Class individually controlling the prosecution of separate actions.
17  The damages sustained by individual Class members will not be large enough to justify
18  individual actions, especially in proportion to the tremendous costs and expenses necessary to
19  prosecute this action. The expense and burden of individual litigation makes it impossible for
20  members of the Class individually to address the wrongs done to them. Class treatment will
21  permit the adjudication of claims of Class members who could not afford individually to litigate
22  their claims against Defendants. Further, because of Defendants' concealment, millions of
23  Californians remain unaware that they have been injured and will not be aware of Defendants'
24  fraud, or the extent and nature of their injury, in the absence of this Class action. Class treatment
25  will permit a large number of similarly situated persons to prosecute their common claims in a
26  single forum simultaneously, efficiently and without the duplication of effort and expense that
27  numerous individual actions would entail. No difficulties are likely to be encountered in the
28  management of this Class action that would preclude its maintenance as a Class action, and no

-23-

1    superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore,

2    Defendants transact substantial business in California and throughout the United States.

3        103.    Defendants will not be prejudiced or inconvenienced by the maintenance of this

4    Class action in this forum.

5                          VI.    **VII. VIOLATIONS ALLEGED**

6                                    **COUNT 1**

7    **Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et. seq.***

8        103.    Plaintiff Estaban Marvilla realleges and incorporates all prior paragraphs of this

9    Complaint.

10       104.    The California Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(5) and

11   (7) (2006), provides, in part, as follows:

12       (a) The following unfair methods of competition and unfair or deceptive acts or
     practices undertaken by any person in a transaction intended to result or which
13       results in the sale or lease of goods or services to any consumer are unlawful:
     . . .
14       (5) Representing that goods or services have sponsorship, approval,
     characteristics, ingredients, uses, benefits or quantities which they do not have. . .;
15       . . .
16       (7) Representing that goods or services are of a particular standard, quality, or
     grade, or that goods are of a particular style or model, if they are of another.

17

18       105.    Defendants' business practices, in advertising, marketing and selling their lawn

19   mowers and lawn mower engines, of misrepresenting and overstating the horsepower of their

20   lawn mowers and lawn mower engines, when, in fact, the actual horsepower of Defendants' lawn

21   mowers and lawn mower engines is less than as represented by Defendants, constitute multiple,

     separate violations of Cal. Civ. Code § 1770(a)(5) and (7) (2006), including:
22
             a.    Falsely representing that Defendants' lawn mowers and lawn mower
23
     engines have characteristics, uses, benefits or quantities of producing the represented horsepower,
24
     when, in fact, they do not; and
25
             b.    Falsely representing that Defendants' lawn mowers and lawnmower engines are of
26
     a particular standard, quality or grade in producing the horsepower represented by Defendants,
27
     when, in fact, they are not and do not.
28

                                                                                    -24-

                                        COMPLAINT

106.    Defendants' business practices, in advertising, marketing and selling their lawn mowers and lawn mower engines while misrepresenting the horsepower of such products, of failing to disclose, concealing, suppressing or omitting material information concerning the true, lower horsepower of their lawn mowers and lawn mower engines, constitute multiple, separate violations of Cal. Civ. Code § 1770(a)(5) and (7) (2006).

107.    Defendants' business practices of advertising, marketing and selling lawn mowers containing identical engines that produce the same horsepower as different products at different prices (higher prices for falsely represented higher horsepower), while misrepresenting the horsepower of such products and concealing, suppressing or omitting material facts, including the facts that such products contain identical engines and the true, lower horsepower of such products, constitute multiple, separate violations of Cal. Civ. Code § 1770(a)(5) and (7) (2006), including:

a.    Falsely representing that such lawn mowers have characteristics, uses, benefits, or quantities, including that they are different products and that they produce the represented horsepower, when, in fact, they are not and do not; and

b.    Falsely representing that such lawn mowers are of a particular standard, quality, grade or style, including that they are different products and that they produce the represented horsepower, when, in fact, they are not and do not.

108.    Plaintiff and members of the Class are consumers, as defined by Cal. Civ. Code § 1761(d) (2006), in that they purchased lawn mowers from Defendants for personal, family or household purposes.

109.    Defendants engaged in the unfair or deceptive acts or practices set forth in this Complaint in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiff and members of the Class.

110.    In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants made the material misrepresentations and omissions set forth in this Complaint in Defendants' advertising, including labeling, packing materials, owner's manuals, Websites, point-of-sale materials and other promotional materials disseminated in California by

-25-

1  or on behalf of Defendants.

2      111.   Defendants' misrepresentations and omissions set forth in this Complaint are

3  material in that they relate to matters that would likely affect the purchasing decisions or conduct

4  of consumers, including Plaintiff and members of the Class, regarding Defendants' products.

5      112.   Defendants' advertising, including labeling and other promotional materials,

6  caused Plaintiff and Class members to purchase Defendants' lawn mowers and lawn mower

7  engines.

8      113.   Plaintiff and members of the Class have been injured in their money or property

9  by Defendants' unfair or deceptive acts or practices set forth in this Complaint.

10      114.   As a result of Defendants' violations of Cal. Civ. Code § 1770, Plaintiff Marvilla

11  and members of the Class are entitled to injunctive relief and any other relief the court deems

12  proper, pursuant to California law, including Cal. Civ. Code § 1780(a).

13      115.   Pursuant to Cal. Civ. Code § 1782, Plaintiff, by his undersigned counsel, provided

14  written notice to Defendants at least thirty days prior to filing this Complaint and demanded that

15  Defendants correct or otherwise rectify their unlawful conduct, which Defendants have failed to

16  do despite such notice.

17  **COUNT 2**

18  **False Advertising in Violation of California Business & Professions Code § 17500**

19      116.   Plaintiff Estaban Marvilla realleges and incorporates all prior paragraphs of this

20  Complaint.

21      117.   Cal. Bus. & Prof. Code § 17500, provides, in part, as follows:

22  It is unlawful for any person, firm, corporation or association, or any employee
thereof with intent directly or indirectly to dispose of real or personal property or

23  to perform services, professional or public to enter into any obligation relating
thereto, to make or disseminate or cause to be made or disseminated before the

24  public in this state, or to make or disseminate or cause to be made or disseminated
from this state before the public in any state, in any newspaper or other

25  publication, or any advertising device, or by public outcry or proclamation, or in
any other manner or means whatever, including over the Internet, any statement,

26  concerning that real or personal property or those services, professional or
otherwise, or concerning any circumstance or matter of fact connected with the

27  proposed performance or disposition thereof, which is untrue or misleading, and
which is known, or which by the exercise of reasonable care should be known, to

28  be untrue or misleading, or for any person, firm, or corporation to so make or

COMPLAINT

disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. . . .

118.    Defendants' advertisements for its lawn mowers and lawn mower engines contain untrue or misleading statements concerning the horsepower of Defendants' advertised products in that the actual horsepower of Defendants' lawn mowers and lawn mower engines is less than as represented by Defendants.

119.    Defendants' advertisements for its lawn mowers and lawn mower engines contain untrue or misleading statements concerning the horsepower of Defendants' advertised products in that, while misrepresenting the horsepower of Defendants' lawn mowers and lawn mower engines, Defendants have failed to disclose, concealed, suppressed or omitted material facts, including the true, lower horsepower produced by Defendants' lawn mowers and lawn mower engines.

120.    Defendants' advertisements for lawn mowers containing identical engines that produce the same horsepower but are represented as different products offered and sold at different prices (higher prices for falsely represented higher horsepower) and as containing the horsepower represented by Defendants, contain untrue or misleading statements, and fail to disclose, conceal, suppress or omit material facts, in that the advertised lawn mowers are not different products, contain identical engines and do not produce the horsepower represented by Defendants.

121.    Defendants knew, or in the exercise of reasonable care, should have known that the statements, representations and omissions set forth in this Complaint were untrue and/or misleading.

122.    Defendants' conduct of misrepresenting and overstating the horsepower of their lawn mowers and lawn mower engines in Defendants' advertising disseminated in California constitutes multiple, separate violations of Bus. & Prof. Code § 17500.

123.    Defendants' conduct in failing to disclose, concealing, suppressing or omitting material facts, including the true, lower horsepower of Defendants' lawn mowers and lawn

-27-

1   mower engines in Defendants' advertising disseminated in California constitutes multiple,

2   separate violations of Bus. & Prof. Code § 17500.

3      124. Defendants' conduct in advertising in California Defendants' lawn mowers

4   containing identical engines that produce the same horsepower and representing such products as

5   different products offered and sold at different prices (higher prices for falsely represented higher

6   horsepower), without disclosing the material fact that the lawn mowers contain identical engines,

7   and misrepresenting and failing to disclose, concealing, suppressing or omitting the true, lower

8   horsepower of such engines, constitutes multiple, separate violations of Bus. & Prof. Code

9   §17500.

10     125.   In advertising, marketing and selling Defendants' lawn mowers and lawn mower

11  engines, Defendants made the material misrepresentations and omissions set forth in this

12  Complaint in Defendants' advertising, including labeling, packing materials, owner's manuals,

13  Websites, point-of-sale materials and other promotional materials disseminated in California by

14  or on behalf of Defendants.

15     126.   Defendants' misrepresentations and omissions set forth in this Complaint are

16  material in that they relate to matters that would likely affect the purchasing decisions or conduct

17  of consumers, including Plaintiff Marvilla and members of the Class, regarding Defendants'

18  products.

19     127.   Defendants' advertising, including labeling and other promotional materials,

20  caused Plaintiff and Class members to purchase Defendants' lawn mowers and lawn mower

21  engines.

22     128.   Plaintiff Marvilla and members of the Class have been injured in their money or

23  property Because of Defendants' false or misleading advertising practices as set forth in this

24  Complaint.

25     129.   As a result of Defendants' false or misleading advertising, Plaintiff Marvilla and

26  members of the Class are entitled to damages, injunctive relief, restitution and disgorgement of

27  all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and

28  costs.

-28-

COMPLAINT

## COUNT 3
### Violations of the California Business & Professions Code § 17200, *et seq.*

130.    Plaintiff Estaban Marvilla realleges and incorporates all prior paragraphs of this Complaint.

131.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, defines unfair competition to include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

132.    Defendants' business practices, in advertising, marketing and selling their lawn mowers and lawn mower engines, of misrepresenting and overstating the horsepower of their lawn mowers and lawn mower engines, when, in fact, the actual horsepower of Defendants' lawn mowers and lawn mower engines is less than as represented by Defendants, are:

a.      Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500 (2006), in that Defendants' advertisements contain unfair, deceptive, untrue or misleading statements of material fact which were and are known by Defendants, or which by the exercise of reasonable care should be known, to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200;

b.      Fraudulent business practices and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200, in that members of the public are likely to be deceived by Defendants' acts and practices into believing a material fact, i.e., that Defendants' lawn mowers and lawn mower engines produce the horsepower represented by Defendants when, in fact, they do not; and

c.      Unfair business practices and, thus, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the harm caused by Defendants' actions outweighs any benefits accruing from such actions.

-29-

COMPLAINT

133. Defendants' business practices, in advertising, marketing and selling their lawn mowers and lawn mower engines while misrepresenting the horsepower of such products, of failing to disclose, concealing, suppressing or omitting material facts, including the true, lower horsepower of their lawn mowers and lawn mower engines, are:

      a.     Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500, in that Defendants' advertisements contain unfair, deceptive, untrue or misleading statements which were and are known by Defendants, or which by the exercise of reasonable care should be known, to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200;

      b.     Fraudulent business practices and, thus, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17200, in that members of the public are likely to be deceived by Defendants' acts and practices into believing that Defendants' lawn mowers and lawn mower engines produce the horsepower represented by Defendants when, in fact, they do not; and

      c.     Unfair business practices and, thus, constitutes multiple, separate violations of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the harm caused by Defendants' actions outweighs any benefits accruing from such actions.

134. Defendants' business practices of advertising, marketing and selling lawn mowers containing identical engines that produce the same horsepower as different products at different prices (higher prices for falsely represented higher horsepower), while misrepresenting the horsepower of Defendants' products and failing to disclose, concealing, suppressing or omitting material facts, including the facts that such products contain identical engines and the true, lower horsepower of such products, are:

      a.     Unlawful, as proscribed by Cal. Bus. & Prof. Code § 17500, in that Defendants' advertisements contain unfair, deceptive, untrue or misleading statements which were and are known by Defendants, or which by the exercise of reasonable care should be

-30-

COMPLAINT

1  known, to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus.

2  & Prof. Code § 17200;

3         b.    Fraudulent business practices and, thus, constitutes multiple, separate

4  violations of Cal. Bus. & Prof. Code § 17200, in that members of the public are likely to be

5  deceived by Defendants' acts and practices into believing that such lawn mowers are different

6  products and produce the horsepower represented by Defendants when, in fact, they contain

7  identical engines and do not produce the horsepower represented by Defendants; and

8         c.    Unfair business practices and, thus, constitute multiple, separate violations

9  of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, are

10  unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the

11  harm caused by Defendants' actions outweighs any benefits accruing from such actions.

12       135.   In advertising, marketing and selling Defendants' lawn mowers and lawn mower

13  engines, Defendants made the material misrepresentations and omissions set forth in this

14  Complaint in Defendants' advertising, including labeling, packing materials, owner's manuals,

15  Websites, point-of-sale materials and other promotional materials disseminated in California by

16  or on behalf of Defendants.

17       136.   Defendants' misrepresentations and omissions set forth in this Complaint are

18  material in that they relate to matters that would likely affect the purchasing decisions or conduct

19  of consumers, including Plaintiff Marvilla and members of the Class, regarding Defendants' ·

20  products.

21       137.   Defendants' advertising, including labeling and other promotional materials,

22  caused Plaintiff and Class members to purchase Defendants' lawn mowers and lawn mower

23  engines.

24       138.   Plaintiff Marvilla and members of the Class have been injured in their money or

25  property Because of Defendants' unlawful, unfair, or fraudulent business acts or practices and

26  unfair, deceptive, untrue or misleading advertising, as set forth in this Complaint.

27       139.   As a result of Defendants' violations of Cal. Bus. & Prof. Code § 17200, et seq.

28  Plaintiff Marvilla and members of the Class are entitled to damages, restitution and disgorgement

-31-

1 of all monies obtained by Defendants by means of Defendants' unlawful practices, injunctive

2 relief, interest, and attorneys' fees and costs, pursuant to California law.

3 ### COUNT 4
### Unjust Enrichment and Disgorgement of Profits

4

5     140.   Plaintiff Estaban Marvilla realleges and incorporates all prior paragraphs of this

6 Complaint.

7     141.   Defendants have been unjustly enriched through overpayments by Plaintiff and

8 Class members and the resulting profits enjoyed by Defendants as a direct result of such

9 overpayments. Plaintiff's detriment and Defendants' enrichment were related to and flowed from

10 the conduct challenged in this Complaint.

11     142.   Under California's common law principles of unjust enrichment, Defendants

12 should not be permitted to retain the benefits conferred via overpayments by Plaintiff and

13 members of the Class.

14     143.   Plaintiff and members of the Class seek disgorgement of all profits resulting from

15 such overpayments and establishment of a constructive trust from which Plaintiff and Class

16 members may seek restitution.

17 ### COUNT 5
### Civil Conspiracy

18

19     144.   Plaintiff Estaban Marvilla realleges and incorporates all prior paragraphs of this

20 Complaint.

21     145.   Defendants know that other Defendants' lawn mower engines do not produce the

22 horsepower represented by such other Defendants. Such knowledge derives, in part, from

23 Defendants' testing of other Defendants' engines and from communications, meetings and

24 conferences between and among Defendants as set forth in this Complaint. Defendants are aware

25 that the other Defendants misrepresent and overstate the horsepower of their lawn mowers and

26 lawn mower engines and that other Defendants conceal, suppress and fail to disclose to the public

27 the true, lower horsepower of their products.

28     146.   Despite knowing of the other Defendants' horsepower misrepresentations and

-32-

1    omissions, Defendants agreed among and between themselves and conspired to conceal and

2    suppress truthful information about the actual, lower-than-represented horsepower of other

3    Defendants' lawn mowers and lawn mower engines, and to conceal and suppress truthful

4    information that would expose other Defendants' misrepresentations, overstatements and

5    omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower

6    engines, while concealing and suppressing truthful information about the actual, lower-than-

7    represented horsepower of Defendants' own lawn mowers and lawn mower engines.

8        147.   In furtherance of the conspiracy, Defendants actively concealed and suppressed

9    truthful information concerning the actual horsepower of other Defendants' lawn mowers and

10   lawn mower engines and concealed and suppressed truthful information that would expose other

11   Defendants' misrepresentations, overstatements and omissions relating to the horsepower of

12   other Defendants' lawn mowers and lawn mower engines, while continuing to misrepresent,

13   significantly overstate and conceal and suppress information concerning the actual, lower

14   horsepower of Defendants' own lawn mowers and lawn mower engines. Defendants acted for the

15   common purpose and design of avoiding detection, earning revenue from advertising and selling

16   products that were not as represented to the public, and concealing their unlawful conduct from

17   Plaintiff, the Class and the public.

18       148.   As set forth in this Complaint, Defendants committed unlawful acts or practices in

19   furtherance of the conspiracy, including:

20           a.      Concealing and suppressing truthful information about the actual, lower-

21   than-represented horsepower of other Defendants' lawn mowers and lawn mower engines and

22   concealing and suppressing truthful information that would expose other Defendants'

23   misrepresentations, overstatements and omissions relating to the horsepower of other

24   Defendants' lawn mowers and lawn mower engines, while continuing to misrepresent, overstate

25   and conceal and suppress information concerning the true, lower-than-represented horsepower of

26   Defendants' own lawn mowers and lawn mower engines;

27           b.      Amending, or causing to be amended, the amendment of the voluntary

28   industry standard SAE J1940 in order to conceal Defendants' past horsepower misrepresentations

-33-

1   and omissions and to allow Defendants to continue, and continue to conceal, their horsepower

2   misrepresentations and omissions;

3          c.     Concealing and suppressing the fraudulent, deceptive purpose of the

4   amendments to the SAE standard and creating false or misleading explanations for the adoption

5   or purpose of those amendments; and

6          d.     Engaging in the unfair and deceptive acts and practices set forth in this

7   Complaint, in violation of the California statutory consumer laws.

8       149.   Defendants conspired and acted in furtherance of the conspiracy for the common

9   purpose of perpetuating Defendants' fraudulent horsepower inflation scheme in order to

10  maximize profits from the advertising and sale of Defendants' lawn mowers and lawn mower

11  engines that were not as represented by Defendants. Defendants' horsepower inflation scheme is

12  dependent upon each Defendant's concealment and suppression of truthful information

13  concerning other Defendants' horsepower misrepresentations and overstatements and the

14  concealment and suppression of the true, lower-than-represented horsepower of other

15  Defendants' products, thereby allowing each Defendant to continue to misrepresent, overstate

16  and conceal and suppress truthful information concerning the actual, lower horsepower contained

17  in Defendants' own lawn mowers and lawn mower engines.

18      150.   Defendants' unlawful conduct set forth in this Complaint was done as part of a

19  conspiracy to deceive and mislead Plaintiff and members of the public in violation of the

20  California consumer laws.

21      151.   As a proximate result of Defendants' conspiracy, and Defendants' tortious,

22  unlawful conduct in furtherance of the conspiracy, Plaintiff and members of the Class have been

23  injured and have suffered damages, including paying for products that were not as represented by

24  Defendants, and paying more for such products than Plaintiff and members of the Class would

25  have paid in the absence of Defendants' conspiracy.

26      152.   Plaintiff and members of the Class seek recovery of damages, in an amount to be

27  determined at trial, caused by Defendants' conspiracy and Defendants' unlawful acts in

28  furtherance of their conspiracy to defraud Plaintiff and the public.

-34-

153.    In doing the things herein alleged, Defendants acted with malice and with fraud, willfully and with the intent to cause injury to the Plaintiff and the Class he seeks to represent. Defendants were therefore guilty of fraud and conscious disregard of Plaintiff's and the Class's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar misconduct.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award judgment, jointly and severally, against Defendants as follows:

A.    Entering an order certifying this action as a Class action, properly brought by Plaintiff on behalf of the Class, as defined in this Complaint; certifying Plaintiff as representative of the Class; and appointing Plaintiff's counsel as counsel for the Class;

B.    Declaring that Defendants' acts and practices as set forth in this Complaint constitute multiple, separate violations the above California statutory consumer laws;

C.    Enjoining Defendants from engaging in the unlawful acts and practices set forth in this Complaint and from further violations of California statutory consumer laws and common law;

D.    Enjoining Defendants from misrepresenting to the consuming public any power rating regarding their engines or lawn mowers;

E.    Awarding Plaintiff and the members of each Class actual, compensatory damages in an amount to be determined at trial;

F.    Awarding Plaintiff and members of the Class exemplary or punitive damages as provided by law;

G.    Ordering Defendants to disgorge to Plaintiff and the members of the Class all monies unjustly received through Defendants' unlawful conduct;

H.    Awarding restitution to Plaintiff and members of the Class as provided by law;

I.    Awarding Plaintiff and members of the Class pre-judgment and postjudgment interest as provided by law;

-35-

COMPLAINT

1       J.    Awarding Plaintiff and the Class costs and reasonable attorneys' fees as provided

2   by law; and

3       K.    Granting Plaintiff and the Class such other and further relief as the Court finds just

4   and proper.

5                     **DEMAND FOR JURY TRIAL**

6       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury

7   trial as to all issues so triable.

8   Date: June                    Respectfully submitted,

9

10                     By: _____

11                     REGINALD TERRELL
                       Attorneys for Plaintiffs

12

13                     **DONALD AMAMGBO**
                       **7901 OAKPORT, SUITE 4900**

14                     **OAKLAND, CA 94621**
                       **TELEPHONE:  510 615 6000**

15                     **FACSIMILE:  510 615 6025**

16                     **REGINALD TERRELL**
                       **THE TERRELL LAW GROUP**

17                     **223 25TH STREET**
                       **RICHMOND 94804**

18                     **TELEPHONE:  510 237 9700**

19                     **FACSIMILE:  510 237 4616**

20

21

22

23

24

25

26

27

28

                                                          -36-

                       **COMPLAINT**